Coy Chiropractic vs. Travelers 08-578. Mr. Johnson, is that right? You're up first. Thank you very much. May it please the Court. My name is Robert Johnson. I represent the appellants, the Travelers Casualty & Surety Company and the Travelers Indemnity Company. We submit, Your Honors, that the circuit court certification of the class in this case is contrary to the controlling precedent of the Supreme Court and that affirming the circuit court's ruling would undermine settled law concerning proximate causation and injury as articulated by the Supreme Court in several cases handed down over the last eight years, including most recently, of course, the opinion of DuPose. The complaint in this case alleges three specific claims. It alleges violation of the Illinois Consumer Fraud Act, breach of contract, and unjust enrichment. Let me address the Consumer Fraud Act claim first. The Supreme Court has made it clear in an unbroken string of decisions, starting with Olivera in 2002, through the DuPose decision, which was handed down this past December, that proximate causation is an element of all private causes of action under the Act. Furthermore, to prevail under the Act, the plaintiff must also prove that he or she was actually damaged by the alleged fraud. So what does this mean in the class action context? Well, as expressly stated in Barber Sales, it means that for a deception claim, the named plaintiffs must prove that each and every consumer who seeks redress actually was deceived by the statements in question. In Barber Sales, the Supreme Court reversed the class certification because the plaintiffs did not demonstrate that they were, as a class, deceived by the defendant's statements. So let's turn to the deceptive statement that is alleged in the complaint in this case. The complaint says that the plaintiff's, that the deceptive statement was contained in an explanation of benefits the traveler sent to in-network medical providers with payment of workers' compensation claims. That statement, the complaint alleges, was that the payment was reimbursed by travelers in accordance with the First Health Network contract. Now, it's undisputed that travelers had a contract with First Health. And it's also undisputed that travelers' contract with First Health did not expressly require travelers to provide financial incentives to workers who were treated by in-network providers. Nevertheless, plaintiffs contend that this statement was deceptive because travelers purportedly knew that no financial incentives, and I'm quoting from the complaint, no financial incentives or other channeling programs had been employed to prefer the in-network health care providers. But whether each class member, whether each class member was deceived by the statement and the explanation of benefits is clearly an individualized question that under the controlling Supreme Court precedent cannot be proved on a class-wide basis. And the individualized questions are amply demonstrated here, we believe, by the testimony of the named plaintiffs themselves. Plaintiff Coy testified that he knew as early as 1985, six years before he signed his PPO contract with First Health, that insurers were applying PPO discounts to workers' compensation plans in Illinois. He also knew that under Illinois workers' compensation law, insurers could not provide the type of financial incentives that he believed should be provided under PPO. And that is the incentive for a worker to use an in-network provider because the worker would be required to pay less out of his or her own pocket than going to an in-network provider. That's because, obviously, for workers' compensation services, the worker is not required to pay anything out of his or her own pocket. Despite knowing that the Illinois insurers cannot give this type of financial incentive on workers' compensation claims, Coy entered into a First Health PPO contract that applied to workers' compensation claims, and it expressly set forth the rates to be paid on workers' compensation claims. Furthermore, that agreement did not state that the network providers such as travelers I'm sorry, the network payers such as travelers, would provide the type of financial incentive to patients that Coy believed a PPO should offer. And as I just mentioned, there was nothing at all in the contract between First Health and travelers that required travelers to provide financial incentives. Instead, that contract required travelers to engage in a number of other practices designed to cause workers' compensation patients to be channeled to in-network providers. Now, two years after signing this First Health agreement, Coy received the explanation of benefits that's attached to the complaint, and it shows a discount, he received it from travelers, and it shows a discounted payment on the workers' compensation claim. But despite this, Coy decided to remain in the First Health network for four more years. Now, based on this individual set of facts, a jury in this case will need to determine whether Coy was deceived by travelers' explanation of benefits statement and whether it approximately caused him damage. Based on Coy's understanding that such financial incentives could not be given in Illinois, it would seem, of course, unlikely that Coy could prove approximate cause of damages. But most significantly, in the class action context, even if Coy were able to prove his individual claim, it will not determine the right to recovery of any of the other class members. Under Oliveira and Barber's sales, the plaintiffs must prove that each of those class members also was deceived by the explanation of benefits statement and occurred damages approximately caused by the statement. These clearly are individualized questions dependent on the facts pertaining to what each class member saw, what each class member knew, and what each class member relied upon. Now, Bemis' testimony, plaintiff Bemis' testimony also demonstrates the individualized nature of the questions that predominate here. In fact, Bemis testified in his deposition that he did not find the travelers' explanation of benefits statement to be deceptive at all. Rather, he found it to be, and I'm quoting, very forthright. Moreover, unlike Coy, Bemis testified that by entering into a PPO contract, he believed that workers' compensation payments patients should have been referred to him not through financial incentives, but by his having been included on a panel of positions from which patients must select the provider. Now, the creation of a panel is permitted by the Workers' Compensation Act, but it's certainly not required. And in any event, no panel of providers was ever formed, so Bemis was not excluded from such a panel, and neither First Health nor travelers ever told him that such a panel would be formed. So even the two named plaintiffs here do not agree on whether the explanation of benefits statement was deceptive or whether they were damaged and reliant. More importantly, their testimony shows nothing about whether each and every other class member was deceived, and if so, whether those class members' damages were approximately caused by that reliance. That is precisely what actual deception cannot be shown on a class-wide basis here. Now, plaintiffs, I think, are concerned about that, and they contend that even if the deception class claim is not certifiable, their unfair practices claim is. The three elements of an unfair practices claim are, of course, that the alleged practice offends public policy, that it's oppressive, and that it causes substantial injury to consumers. Now, with regard to the issue of oppressiveness, the determination of that element necessarily depends on individualized questions. With regard to oppressiveness, both Coy and Bemis had a choice whether to join the PPO network. They both testified that they had all the information they needed to make a meaningful choice whether to join. Coy testified that he knew in the mid-1980s that workers' compensation patients couldn't receive financial incentives, but he chose to join the network anyway. That's confusing to me. I mean, is there anything in the record to explain why, if you don't get channeling or you don't get referrals or any other financial incentives, why would you be in the network? Well, you do get channeling, Your Honor, and that's an issue here. There is channeling, and the channeling isn't from financial incentives because they can't be given in the workers' compensation context. But Travelers is required under its contract with First Health to engage in various practices that, in effect, channel patients to the in-network providers. It was required to distribute materials about the network to its employer customers. It was required to advise customers that the network is available and that Travelers is recommending the network. It was required to educate employers about how to access the network, and it was required to direct, where it could, injured workers to in-network providers and making available to claims-adjusting personnel directories listing the network providers. Those were all provided for in the contract that Travelers entered into with First Health, and pursuant to that contract- Like send out brochures or something? Yeah, and they send out, I mean, this stuff is done by computer these days, so sometimes packets are sent out, actual physical packets. Other times there are stuff that's sent to the employers on the internet. And also pursuant to the contract, Travelers operates a 24-hour 800 number from which workers can obtain the names of local network providers. And also Travelers has a website that workers can access to get the same information. So there is channeling. That's not an issue. There is channeling. The issue is whether there is a requirement for financial incentives, and that's what the other side has argued, and the bottom line is that the named plaintiffs understood the financial incentives could not be given in Illinois, and yet they decided to enter into the contracts anyway. And as Coy testified, he knew by the mid-1980s that workers' compatients couldn't receive financial incentives, but he chose to join it anyway. And years later he withdrew, so obviously he had the choice to withdraw. Bemis also understood the workers' compensation law before he joined the PPO, and furthermore, he first contracted with CCN, and then he withdrew from the CCN contract and entered into another PPO contract with First Health. He testified that he planned to opt out of the workers' compensation portion of the First Health contract, which he had the right to do, but he chose apparently not to do so. So this is the whole factual situation is similar to the factual situation in this case of Saunders v. Michigan Avenue Bank. That's where there was this high overdraft fee, and the court found that that was not oppressive because the customer could go elsewhere. These named plaintiffs could and did obviously have the right to go elsewhere. They had the choice. So on that basis we think that it's not unfair. We also think it's not unfair because, as I just mentioned, there is indeed channeling that's required in the agreement, and Travelers does do its level best to follow that agreement and channel patients to the in-network providers. Now, we think all of those issues obviously impact on the unfair practice, and furthermore, both the unfair practice claim, and furthermore, both the workers and employers benefit from the First Health PPO contract, in other words, the workers benefited because the PPO contracts prohibited the providers from balance billing the workers. In other words, a payment would be made at a discount, and interestingly enough, despite the requirement in his First Health agreement, Coy decided to go ahead and balance bill anyone. So he would bill, even though Travelers would pay at a discount, he would go ahead and balance bill the patients for the remainder that he wasn't paid based on his charge, which was in contravention of his contract with First Health. Let's go back to the financial incentives. The plan says that there's two letters in which First Health stated that there are financial incentives. Well, those letters state that there are incentives, I believe. Financial incentives, and that's what's quoted. Well, those letters are taken outside of, those letters are extrinsic evidence in effect that, you know, go outside of the contracts, and those letters I don't think are determinative of the issues here. The contracts here are absolutely crystal clear, and the contracts do not require financial incentives. The injury issue is also impacted, I might say, by Coy's decision to balance bill. If he balanced billed patients, he's not damaged. And Bemis also testified that he charged workers' compensation patients $10 per month, so whether he kept those payments also raises a question as to whether he was damaged. Finally, Coy admitted that if a patient was referred to him by travelers, travelers would be entitled to take the PPO discount. So we submit that all of these individualized issues obviously prevent the certification of a Consumer Fraud Act claim class. Now let me turn to the breach of contract claim. We've touched on the contracts. If there were a uniform contract between travelers and each provider, it set forth the duties and obligations of travelers under the contract. Certification of a provider class on a breach of contract claim obviously might be appropriate. But that's not what we have here. Instead, the contracts at issue vary materially, just as they did in the case of stock versus integrated health plan, in which Judge Hearn denied certification of a class of providers in another PPO case because the provider contracts there were not uniform. And some of these differences go to the very heart of the contract claim. They go directly to the issue as to whether there's a binding contract between travelers and each class member and whether that was actually formed. Therefore, as an aviary, we submit that these differences compel the conclusion that the class must be decertified. Now let me explain the contract issue. Let me start with Coy's contract. Like all the class members, Coy did not contract directly with travelers. Instead, Coy entered into a contract with First Health, and that contract did not incorporate expressly the separate agreement between First Health and travelers. So there is a question of contract formation as to Coy. Is there any contract at all between Coy on the one hand and travelers on the other hand? We submit that's doubtful, but that's a merits issue. But we submit that it's doubtful because, after all, Illinois is clear that separate contracts cannot be construed as one unless the documents specifically and expressly incorporate one another by reference, the documents to be incorporated are both parties, and the contracts are executed by the same parties for the same purposes. Significantly, the travelers First Health agreement does not state that it incorporates any provider agreements at all, much less Coy's contract in particular. It is for exactly these reasons that Judge Gilbert, in a case entitled Roche v. Travelers, found that no contract existed between the plaintiff provider in that case and travelers. Judge Gilbert wrote, and I'm quoting, Roche asked the court to read documents executed years apart together in such a way as to form a contract between parties who were unaware of the identity of each other at the time the documents were executed and in contravention of the expressed language of the documents. That language I read to you was a First Health letter, not a traveler's. That's what I thought, Your Honor. That's correct. And that is not, and obviously we're not responsible for what First Health puts out. But what's significant here, I think, is that the First Health contracts, the First Health contracts with the providers don't offer financial incentives. Nor does Coy have a claim here that he's a third-party beneficiary of the Travelers First Health agreement. Indeed, that agreement expressly provides that it does not create any third-party beneficiary rights in any other party. So the provider agreement signed by F. Ryan Bemis, on the other hand, which is attached to the complaint, states the payer agreements are incorporated herein by reference. So Bemis' right to sue travelers for breach of contract raises an entirely different factual and legal setting and issue as to whether his contract gives him the right to sue travelers. There are other differences in the contracts. Time doesn't permit me to go through them all, but they're set forth in our brief. Among them is some contracts require arbitration and others don't. Let me quickly end with the unjust enrichment claim, which basically raises the same sort of individualized issues that I've talked about with regard to the other two claims. Indeed, it raises the individualized issue as to whether or not, well, it would require a class member by class member adjudication. You'll have time to rebut. Okay. Thank you. Are you Mr. Camp? No, Rob Schmier. Oh, okay. They usually give us sheets here, but I don't know where our sign-in sheets are. May it please the Court, I'm Rob Schmier, lead class counsel in this matter. After carefully reviewing the pleadings, the evidence, the briefs, oral arguments, the trial court promptly exercises discretion to certify the class. Now, my former partner has, one of the reasons I became a plaintiff's lawyer was so that I can say what my case is about. As a defense attorney, you can try to say what the plaintiff's case is about, but really the plaintiff gets to control the case. So I can tell you what our case is about is a breach of contract case. It's a breach of contract case with an alternative count in the event that there is no contract between the parties. Because as the Supreme Court in Avery said, you can't have a consumer fraud account based upon a breach of contract. Paragraph three of their first affirmative defense. So we all agree on that. So what we have here is we have a situation. Is there a contract between the provider class and travelers through First Health? That's the first common question. We know we have uniform contract language. They can try to insert all these other contracts. There's no evidence other than them going to First Health and saying, give us some contracts that we have that may vary. There's no evidence of how they were collected, whether any of them involved class members, whether travelers ever took a PPO discount from any of them. We went through this in the trial court. But what we do know is that First Health is a registered PPO administrator in the state of Illinois. There's a statute and regulations that govern exactly what needs to happen in Illinois to set up a PPO with a PPO administrator. You need to have a PPO administrator enter into provider contracts and then a payor contract. That's how the contractual link between parties exists. That's what the statute says. That's what the regulations say. Then the PPO administrator is required by regulation to file all administrative agreements, payor agreements, and provider agreements that they use. If the terms and conditions in such agreements include significant, substantial, or material variations, the filing of one who could set with a description of all the variable terms and conditions will satisfy. We subpoenaed First Health. We sent a FOIA request to the Department of Insurance. Guess what we got back? Their form agreements. Those form agreements do not differ in any respect whatsoever that is material to this case. That's what we submitted to the court. And we also submitted a chart, which was marked as Exhibit J, which is in the record at C-565-568, which showed these contracts are form contracts that First Health entered into with the provider agreement. Now, with Travelers, First Health entered into a payor agreement. The payor agreement is the same payor agreement for the whole class period. So Mr. Johnson is absolutely correct on one thing. The question is going to be, did a contract form between the class members and Travelers? That's common. It doesn't vary in any respect whatsoever. If the court finds that there is a contractual relationship between Travelers and the class, which, by the way, Travelers has asserted as an affirmative defense that they had a contractual right to take these PPO discounts. So they need to prove that as an affirmative defense to their consumer fraud and unjust enrichment counts. Did the trial court in any way address how you could show that a valid contract exists? And that's the issue. That is, we argued back and forth on this. I mean, there's the agreement for Illinois statutes. They cited this Roche versus Travelers case. I was on counsel in that case, and I can tell you when you look at that case, the court didn't address, number one, the Illinois statutes and regulations that say you need a provider agreement and a payor agreement to complete that relationship. Number two, I disagree with the statement that it says it's got to expressly incorporate it by reference. It does not. It's got to refer to it time and time again and show an intent from the objective document. When you look at the payor agreement, there's a definition for provider agreements. Well, what is that? That's the very form of provider agreements that First Health entered into. So then they claim that they're a third-party beneficiary of our agreement, but we could never be a third-party beneficiary of theirs. Well, when you answer that question, we all know from law school a third-party beneficiary has no obligations. They just benefit. Yet in their contract, it says Travelers will direct claimants to providers. Now, they can sit up there and say nothing in these contracts say that it requires financial incentives. And I think you pointed out just some of the other evidence that we put in. But he didn't once say what that contract says. It says will direct. And that's another thing that the Roche case got wrong. In that case, the court said, here, Travelers belongs to a PPO network which employs the business model of a non-directed PPO. That's what the court said. If you look at the payor agreements, and the common law side is C119, Section 2.3, the title says direction to AMN. AMN is the former name of First Health. Then it says TIC, which is Travelers Indemnity Company, will direct claimants to contract providers. They had an obligation to direct. So the next question that's common to the whole class, again, is what does the term direct mean? Well, we submitted evidence that can be used on a class-wide basis for the other party in that agreement, First Health. First Health has gone on record. They've actually sued and been fined by the Seventh Circuit to have taken the position that their PPO is a directed PPO. And they said what direct means, what refer means, what steerage means is that there has to be financial incentives. Now, do you allege that the plaintiffs are third-party beneficiaries? We do. You do. I certainly hope that. We've certainly made the arguments. What we've alleged is that there's a single contract that forms. I think that's what we've alleged is a single contract that forms. Alternatively, we have to be third-party beneficiaries. And by the way, they say they've got this disclaimer language, no third-party beneficiaries. But it's very, very clear that where those disclaimers are not dispositive, where there's a clear intent in the document itself to benefit a third party. And that's the American United Logistics case, which is a Seventh Circuit case applying Illinois law. But those, you know, I can keep going and I'll be happy to go through all the detail and all the evidence that we have to prove it because we also have a traveler's definition. The internal traveler's document defined what a preferred provider organization or network is. And they said it's an arrangement with a group of providers who offer services typically at a discount to employees who have an incentive to use the groups or panel. That's right there at the record on 158. Travelers defines the term PPO, which is used throughout the payroll agreement and the provider agreements, saying that it requires an incentive. Now, we can argue about whether I'm right or wrong on whether that incentive has to be financial in nature. But that issue, again, is how it's expressed. It's going to be dispositive. So when you break down this case, when you look at it and you say, okay, is there a contract? If there's a contract, yes. Well, then the next question that predominates is, is there a duty to provide financial incentives? If the answer is no, travelers wins the whole case. No individual issues left. If the answer is yes, we have undisputed evidence that there were no financial incentives ever provided by travelers or that they even existed. So the answer for the whole class is that we've established breach. So not having established a contract, a duty, and a breach, all through the same evidence, the last issue is damages. Damages never defeat certification. But regardless of that, in this particular case, travelers has the ability to pull out by tax ID number of every single class member, every single doctor who signed up with this, they can tell you to the penny what they took away from that doctor in PPO discounts. So that's even going to be a relatively simple case. So if we go to the contract side, it gets rid of all alternative accounts. If no contract formed between the parties, well, then the contracts are irrelevant. Now, what Mr. Johnson was arguing about what the deceptive conduct was is not the deceptive conduct. Right there in paragraph 58F, what we allege is if you don't have a contract, well, then you lied about it. You said it right there on the AOB. You stole money from these providers by reimbursement of a lesser amount. You took the money and simultaneously took it under false pretenses by making a representation that you had a PPO contract. Getting to the fraud aspect of it. Sure. You want to respond to his opposing counsel's statement that I think Coy or Beams, I think it's Coy, waited four years before he did anything and kept on participating in the agreement or in the arrangement, knowing that he was being deceived all this time? Well, that's not accurate. What happens is he signs his agreement with First Health. First Health offers this to group health, auto, other indemnity claims. So he's actually seen financial incentives to group health aspects. It's not like it was just one agreement with travelers. It was to join this network to which the payer agreements, according to First Health, were required to provide financial incentives. So he entered into this agreement. His continued participation in that has to do with other benefits that he's getting from other payers, not from travelers. And when you read his deposition testimony, what's clear is that the moment he started realizing, wait a second, why is travelers taking these and we're a cop, he contacted us, we investigated, and we see within a year and a half of him determining that that was an issue. But the issue, again, is not what he knew and how he was deceived. All the cases that they cite are deceptive advertising cases, which necessarily there's a representation and there's some inducement to get the consumer or someone to act or not act based upon that representation. This is a different situation. This is a simultaneous taking of the doctor's mind under false pretenses. So I call it deception. Maybe it's more properly characterized as an unfair practice. I don't know. But the point is it's simultaneous. And so when you look at it, the facts, again, the only time this comes into play is if the trial court finds that there's no contractual relationship with the parties. So if there's no contract, that's common to the class. We have a uniform explanation of review. We have a uniform statement that the discount that they claimed a right to was because they were a valid payor in the agreement, which we know is not true because there would be no contract form. That finding would have already been found to be false. And then they took that PPO discount and kept the money under that representation. And that was the same conduct as everybody. It was uniform. They said that they did it to every single doctor time and time again. So once you find that there's no contract, I don't know that there's one person in this courtroom that could honestly say that taking money, saying that you had a contractual right when you really didn't, isn't deceptive or unfair or under false pretenses, whatever other term under the act to establish a violation. Clearly it is. And that's what our deception claim, deceptive claim is about. It's not about whether you use evidence of disagreement. There would already be a finding that there was no agreement by the time we get to a consumer fraud count. In the same way with the unjust enrichment. I mean, the unjust enrichment are just alternative theories. And as this court found in Clark v. Pat Pharmaceuticals, unjust enrichment is perfectly fine in a class action setting. That was the deception of the inflated pricing of pharmaceuticals in that case. Here, making a representation, stealing money basically under false pretenses would, I think, in a uniform manner, satisfy every single one of those claims. Let's go back to the breach of contract. How many PPO contracts were there or are there? How many? How many? How many? Full forms? Full forms. Well, there was never a person on this court. My question is going to be how does Avery not defeat you? No, no, no. But I just want to be clear about what I'm telling you. There's the Affordable Network, which changed its name to First Health. So you have Affordable Individual Provider Agreements, Provider Group Agreements, and Clinic Agreements. So there's three forms. They then changed their name so then there's the First Health, Provider Group, Clinic Agreements. All those agreements are the same. We've attached them. There are no material variations. They all use the same magic language that we're fighting over, PPO, Preferred Provider, and then direct is the term in the Payroll Agreement that would apply. So all of those are the same. Then we have another set of agreements. First Health purchased the CCN Network, and there's those same three agreements. Those three agreements are the same within each other. They use the same language. I argued that they were not materially different. The trial court reserved the right to subclass that group out to avoid an Avery problem as we went forward. Then there were other networks, MedView, things like that. Those were not certified by the clinics. So it was a very narrow class within the First Health Network. It was those who signed that First Health slash Affordable Provider Agreement or the CCN Provider Agreement, and he reserved the right to subclass those. Are you going to talk about Dubose? I'm sorry? Dubose? Dubose? I don't know how to pronounce it. No, no, no. I just didn't hear you. Dubose? Yes. Well, I think when you look at Dubose, there the issue was, again, deceptive advertising. So did they receive a communication that they then basically went and purchased this cholesterol-reducing drug? And the plaintiff couldn't say, no, I didn't do anything that caused me to spend that money. And, of course, we're talking about the magic language of damages as a result of a violation of the act. Well, Travers has admitted that they took the PPO discounts as a result of the representation that they had a valid payor agreement in their contractual relationship. So, again, if the court finds that there is no contractual relationship, Travers has admitted that those discounts were taken as a result of that false representation, that false pretense, that misunderstanding. So there is no issue. And I do want to point the court to what I think will help explain why this is different than Dubose. When you look at the Connick case, the Connick v. Suzuki case from 1996, the Illinois Supreme Court case, the court was talking about proximate cause. And what the court found convincing in that particular case was that there were no facts showing an intervening cause that could break the link of proximate causation. Well, here, if you have a simultaneous, if I hand you a reimbursement that says, you know, a discount, what could happen in between the doctor being shorted by that $20 and that simultaneous representation? There's no intervening cause that could interrupt and show that that discount was not taken as a result of that deceptive comment. So that, I think, is the absolute clear distinction between this situation and Dubose or Oliveira or any of those other cases that talk about, you know, there's a representation or, you know, we're the best, go out and buy our computer chip. Well, then they go out and buy their computer chip, and then the question is, well, why did you really buy it? Did you have a lot of different reasons? Was there something that could intervene between that representation and the moment you were paying money out of your pocket? Here, it occurs simultaneously. And that's the big distinction. And so there's no state of mind issue of what the doctors did. And maybe that's why this is more properly characterized as an unfair practice. And it is oppressive. Mr. Johnson was saying that he had a choice to stay in the network. That's not true. Somebody's stealing money and making a false representation about why they had the right to take that money from you. There was no choice in the matter whatsoever. They cut these checks, drop them in the mail with a little explanation. And that's part of why, you know, some people always say, why is this silent PPO? And defendants mock me and say, you know, we tell you right here we're taking the PPO discount. Yeah, but what you don't tell me is that you don't have a valid agreement to do it. There was never a contractual relationship of that form because we all know that a PPO discount only arises out of a contract. And if you either have that contract right or you don't, if you don't, you're lying about it. Maybe it's not intentional. Maybe you thought you did. It doesn't really matter. It's deceptive. It's a false pretense. And if you have it, those other counts go away. We're not dealing with those counts anymore. And so that's really what we're here. So I did keep wanting to turn this into a consumer fraud case, which, by the way, I do want to bring up the fact that four different circuit judges have looked at these almost identical situations against different payors, and they've all reached the same conclusion. They've all certified these same classes against different payors. We had the Liberty case come up to this court. This court passed the Supreme Court on the exact same basis. We ask the court to affirm. Thank you, counsel. Thank you. Any rebuttal? Yes, Your Honor. Thank you. I have to take issue, obviously, with counsel's statement that he made several times that travelers stole money under false pretenses. The fact is travelers passed a PPO agreement with First Health. Under that agreement with First Health, travelers had the absolute contractual right to take the discounts that it did. The issue here is whether there's a contract between his clients, Coy and Bemis, and then all the other class members, and travelers. That's dependent on the individual contract provision. And the two contracts that they attach to their complaint aren't even the same on this very point. One contract says that the traveler's agreement is incorporated. The other one doesn't. And that there are at least nine different forms of contracts, and that those contracts have been amended from time to time by the providers in First Health and have been negotiated from time to time by the providers in First Health. So you've got a bunch of different agreements that are out there with the class members. And there is not one. As I said, if there were one contract that applied to every class member, then, yeah, okay, fine. You're saying that they're materially different? They are clearly different. Materially different? They are materially different, and they are materially different if you look just at the two contracts that are attached to the complaint. And there obviously are other contracts within the record itself, and we've explained all those differences that are in the contracts, including whether or not arbitration is the vehicle if there's a breach of the contracts. So, your honors, so travelers is entitled to take the PPO discounts, and they clearly are not stealing money. Now, there is nothing unfair if you go beyond the contract claim. Let's assume that the trier of facts says, hey, there aren't any contracts, or maybe the trier of facts will say there are some contracts that are formed with some providers but not with others. That's a possibility given the state of the record. There's nothing unfair in travelers taking the discounts, as I mentioned in my opening argument, because all of the things that travelers has agreed to do in its contract with the First Health Network, it is doing, and it is indeed channeling workers to clients, I'm sorry, to the providers. It is indeed doing that, and in conjunction with that, it's getting a discount that First Health has contracted that travelers can take. Let me finish by just talking briefly about the unjust enrichment claim. Unjust enrichment is an equitable claim, and to determine whether traveler's conduct is inequitable, each class member raises the same sort of individualized questions as those relating to deception and unfair practices. And courts routinely, routinely have denied certification for claims that involve unjust enrichment. In particular, I think the Oceana case, which is the Northern District of Illinois case, is instructive because that's the case where you would have to prove that every class member was deceived into thinking that Fountain Dye Coke was the same as Bottled Dye. I mean, that's an individualized type question, and obviously it was held in that case, that you couldn't certify a class based on that. In conclusion, Your Honors, the Supreme Court has made it clear in Avery that a plaintiff must demonstrate that the successful adjudication of his or her individual claim will establish a right of recovery in each and every other class member. The examples I've given from the testimony of plaintiffs Hoyt and Demas alone and the agreements that the plaintiffs themselves produced show that this simply is not the case here. We submit that the individualized issues as to consumer fraud, contract and enrichment claims simply cannot be decided on a class-wide basis, and that as a result, the Supreme Court's certification of the class here is an abuse of discretion. Thank you, Your Honors. Gentlemen, thank you for your well-written briefs and your argument today. We'll take a matter under advisement and get back with you all shortly.